JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Robert Melton appeals his conviction for assault on a peace officer. He assigns the following three errors for our review:
"I. Defendant's conviction for assault on a peace officer wasnot supported by sufficient evidence as required by due processin violation of U.S. Constitution Amendment XIV and Crim. R.29."
 "II. The court erred in allowing the State's repeated use ofleading questioning of its witness."
 "III. Defendant's conviction for assault on a peace officerwas against the manifest weight of the evidence."
 {¶ 2} Having reviewed the record and pertinent law, we affirm Melton's conviction. The apposite facts follow.
 {¶ 3} The Cuyahoga County Grand Jury indicted Melton on two counts of assault on a peace officer. The first count named Officer Jay Weiss as the victim. The second count named Officer Peter Greene as the victim. Melton entered a plea of not guilty. The matter proceeded to a jury trial.
 {¶ 4} The jury failed to reach a verdict regarding Melton's alleged assault on Officer Weiss and acquitted him of assaulting Officer Greene.[1] The State retried him on the alleged assault of Officer Weiss.
 {¶ 5} At the retrial, Tina Johnson testified that on February 27, 2005, she was driving a bus for RTA. She worked the evening shift from midnight to 8:00 a.m. During the evening Melton boarded Johnson's bus at Ontario and Superior. He was intoxicated and refused to pay his fare. His behavior became belligerent as he used profanity and refused to move from the front area of the bus. Johnson pushed a button that notified the RTA police department that there was a problem. After about five minutes, Melton moved away from Johnson and sat down, without paying his fare.
 {¶ 6} By the time the bus was at East 32nd and Superior, Officer Peter Greene arrived. Johnson testified that she pointed Melton out to the officer. Officer Greene knew Melton's name from previous altercations and ordered him to leave the bus so that they could talk. Melton repeatedly cursed at the officer and refused to get off the bus. He eventually complied with the officer's order.
 {¶ 7} Officer Greene testified that once outside the bus, Melton immediately walked towards the officer's squad car and attempted to get into it, insisting the officer was going to give him a ride. Officer Greene ordered Melton away from the car; Melton complied after trying each of the door handles. Muttering profanities, Melton wandered over to the tree lawn area where he grabbed an empty beer bottle from the ground and threw it at the squad car, shattering the bottle.
 {¶ 8} After throwing the bottle, Melton ran with Officer Greene in pursuit. At some point, Melton slipped on a patch of ice. While he was laying on the ground, Melton threatened the officer, stating, "I'm going to [expletive] you up" while making movements toward an empty bottle on the ground. The officer drew his weapon and ordered Melton to roll over onto his stomach so that he could handcuff him. Melton refused and taunted the officer to pepper spray him, which the officer did. Melton, thereafter, got onto his feet and began to run again.
 {¶ 9} After another short pursuit, Melton again slipped on another patch of ice. When Melton attempted to get up, Officer Greene struck Melton once with his baton in the thigh. Melton then complied with his order to stop. At that point, other units arrived to aid in the arrest of Melton.
 {¶ 10} Officer Earl Hensley testified that he arrived after Melton was arrested. Officer Hensley overheard Melton commenting about officers he hated, one of them being Officer Weiss. Officer Hensley stated that he observed Officer Weiss conduct a pat-down search of Melton's person. Officer Weiss then attempted to return property into Melton's pocket. Melton rolled onto his side and kicked Officer Weiss in the shin of his leg. At that point, other officers rolled Melton onto his stomach to prevent further assaults.
 {¶ 11} Officer Weiss testified he searched Melton for weapons after his arrest. He removed papers from one of Melton's coat pockets. When he attempted to return the papers to Melton's pocket, Melton rolled over onto his hip and kicked the officer while yelling, "leave me the [expletive] alone, bitch!" The kick resulted in bruising and swelling to the officer's leg. The officer received medical treatment from the Cleveland Clinic and was prescribed a full strength pain reliever.
 {¶ 12} At the conclusion of trial, the jury found Melton guilty of assaulting Officer Weiss. The trial court sentenced Melton to fourteen months in prison.
 Sufficiency of the Evidence {¶ 13} In his first assigned error, Melton contends the evidence was insufficient to support his conviction for assaulting Officer Weiss because the State's witnesses failed to make an in-court identification of him at trial. We disagree.
 {¶ 14} The standard of review with regard to the sufficiency of evidence is set forth in State v. Bridgeman:[2]
 "Pursuant to Criminal Rule 29(A), a court shall not order anentry of judgment of acquittal if the evidence is such thatreasonable minds can reach different conclusions as to whethereach material element of a crime has been proved beyond areasonable doubt."[3]
 {¶ 15} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks,[4] in which the Ohio Supreme Court held:
"An appellate court's function when reviewing the sufficiencyof the evidence to support a criminal conviction is to examinethe evidence submitted at trial to determine whether suchevidence, if believed, would convince the average mind of thedefendant's guilt beyond a reasonable doubt. The relevant inquiryis whether, after viewing the evidence in a light most favorableto the prosecution, any rational trier of fact could have foundthe essential elements of the crime proven beyond a reasonabledoubt. (Jackson v. Virginia [1979], 443 U.S. 307,99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)"
 {¶ 16} In the instant case, we agree none of the State witnesses made a formal in-court identification of Melton. However, throughout their testimony, they referred to Melton by name. Identity was not an issue at trial. When cross-examining the State's witnesses about Melton's actions, defense counsel repeatedly referred to him as "Mr. Melton." The State also argued at trial in rebuttal to defense counsel's argument for acquittal based on the lack of in-court identification, that the officers gestured towards Melton while testifying about his actions. The failure to conduct an in-court identification is not fatal to the State's case when the circumstances of the trial indicate the accused is indeed the person about whom the witnesses are testifying.[5] The testimonial evidence offered at trial was sufficient to prove beyond a reasonable doubt that Melton was the person who assaulted Officer Weiss. Accordingly, Melton's first assigned error is overruled.
 Leading Questions {¶ 17} In his second assigned error, Melton argues the trial court erred by allowing the State to improperly use leading questions on direct examination. We disagree.
 {¶ 18} Evid.R. 611(C) does not strictly forbid leading questions, but states "leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony." This exception is broad; it is within the trial court's discretion to allow the use of leading questions.[6]
 {¶ 19} The leading questions Melton contends were asked of Tina Johnson referred to whether Melton was an "irate passenger" and whether the responding officer acted "inappropriately." These questions merely restated the testimony already given by Ms. Johnson because she had already described the behavior of both Melton and the officer. The Supreme Court has held that it is not the improper use of leading questions to direct one's attention to events or to matters on which testimony was already generated.[7]
 {¶ 20} Melton also contends the questions posed to Officer Greene regarding whether Melton's use of profanity was constant and whether the officer had to administer more than one blow of his baton to restrain Melton were leading. The first question was related to Officer Greene's prior testimony regarding Melton's use of profanity, therefore, it was not an improper leading question. The second question was also not a leading question because it was intended to elicit from the officer the amount of force that was necessary to control Melton.
 {¶ 21} Melton also contends that two questions asked of Sergeant Zusman were leading questions. The first sought to elicit testimony regarding Melton's condition after his altercation with Officer Greene where pepper spray was used. Even if this question was leading, it was not prejudicial because whether Melton was injured was not pertinent to whether he kicked Officer Weiss.
 {¶ 22} The second question dealt with whether Officer Zusman observed an interaction between Melton and Officer Weiss. This was not leading, as it did not specify what type of interaction. Moreover, the question was intended to direct Officer Zusman to answer whether he witnessed any interaction between the two, which he did not.
 {¶ 23} Finally, Melton takes issue with the State's inquiring of Officer Weiss whether Melton's kick "knocked him off his feet" or "knocked him back." This question was not leading because it was intended to develop the officer's previous testimony describing the assault. Moreover, no prejudice could have resulted as the officer responded the kick did not knock him down or back. Accordingly, because the cited questions were not leading or prejudicial, Melton's second assigned error has no merit and is overruled.
 Manifest Weight {¶ 24} In his third assigned error, Melton argues his conviction was against the manifest weight of the evidence. Melton claims the testimony by the State's witnesses was contradictory. We disagree.
 {¶ 25} When the argument is made that the conviction is against the manifest weight of the evidence, the appellate court is obliged to consider the weight of the evidence, not its mere legal sufficiency. The defendant has a heavy burden in overcoming the fact finder's verdict. As the Ohio Supreme Court held inState v. Thompkins:[8]
 "Weight of the evidence concerns `the inclination of thegreater amount of credible evidence, offered in a trial, tosupport one side of the issue rather than the other. It indicatesclearly to the jury that the party having the burden of proofwill be entitled to their verdict, if, on weighing the evidencein their minds, they shall find the greater amount of credibleevidence sustains the issue which is to be established beforethem.
 Weight is not a question of mathematics, but depends on itseffect in inducing belief.' Blacks, supra, at 1594.
 "* * * The court, reviewing the entire record, weighs theevidence and all reasonable inferences, considers the credibilityof witnesses and determines whether in resolving conflicts in theevidence, the jury clearly lost its way and created such amanifest miscarriage of justice that the conviction must bereversed and a new trial ordered. The discretionary power togrant a new trial should be exercised only in the exceptionalcase in which the evidence weighs heavily against theconviction."
 {¶ 26} In the instant case, the record shows that the State's witnesses testified consistently with respect to the material information surrounding the incident regarding the assault of Officer Weiss. Although there were minor inconsistencies regarding what occurred prior to this, Officers Hensley and Weiss both offered identical testimony regarding how the assault occurred. They both testified Weiss was attempting to return property to Melton's pocket when he rolled onto his side and kicked the officer in the shin. Based on this testimony, the jury's verdict was not against the manifest weight of the evidence. Accordingly, Melton's third assigned error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Ann Dyke, A.J., and Mary Eileen Kilbane, J., concur.
[1] A jury's failure to reach a verdict traditionally has been described as a "hung jury." A "hung jury" is defined in Black's Dictionary as "a jury is so irreconcilably divided in opinion that they cannot agree on any verdict by the required unanimity." Black's Law Dictionary (6 Ed. Rev. 1990), 741.
[2] (1978), 55 Ohio St.2d 261, syllabus.
[3] See, also, State v. Apanovitch (1987), 33 Ohio St.3d 19,23; State v. Davis (1988), 49 Ohio App.3d 109, 113.
[4](1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
[5] State v. Smith, Cuyahoga App. No. 79637, 2002-Ohio-1662;State v. Monnin (Oct. 12, 1994), 2nd Dist. No. 1250; State v.Baxla (June 13, 1988), 4th Dist. No. 656.
[6] See, State v. Jackson, 92 Ohio St.3d 436, 449,2001-Ohio-1266; State v. Miller (1988), 44 Ohio App.3d 42, 45;State v. Lewis (1982), 4 Ohio App.3d 275; State v. Timperio
(1988), 38 Ohio App.3d 156.
[7] State v. D'Ambrosio (1993), 67 Ohio St.3d 185, 190.
[8] 78 Ohio St.3d 380, 386-387, 1997-Ohio-52.