*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0088p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

ANTOINE D. WILSON,

        *Plaintiff-Appellant,*

    *v.*

TERRY J. COLLINS, et al.,

        *Defendants-Appellees.*

No. 07-3428

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 04-00918—Norah McCann King, Magistrate Judge.

Argued: January 31, 2008

Decided and Filed: February 22, 2008

Before: DAUGHTREY and McKEAGUE, Circuit Judges; GWIN, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Gina R. Russo, VORYS, SATER, SEYMOUR & PEASE, Columbus, Ohio, for Appellant. Richard Thomas Cholar, Jr., OHIO ATTORNEY GENERAL OFFICE, Columbus, Ohio, for Appellees. **ON BRIEF:** Gina R. Russo, William J. Pohlman, Thomas H. Fusonie, Elizabeth Hanning Smith, VORYS, SATER, SEYMOUR & PEASE, Columbus, Ohio, David A. Singleton, OHIO JUSTICE & POLICY CENTER, Cincinnati, Ohio, for Appellant. Richard Thomas Cholar, Jr., OHIO ATTORNEY GENERAL OFFICE, Columbus, Ohio, for Appellees.

_____

## OPINION

_____

    McKEAGUE, Circuit Judge. Plaintiff-appellant, a prisoner in the custody of the Ohio Department of Rehabilitation and Correction, challenges the constitutionality of Ohio's DNA Act, which requires the collection of DNA specimens from convicted felons. Below, plaintiff sought declaratory and injunctive relief, contending that the Act is violative of his Fourth Amendment, Fifth Amendment, due process and equal protection rights. The district court awarded summary judgment to the defendants on all claims. Finding the district court's opinion to be well-reasoned and consistent with the growing body of case law on such challenges to DNA statutes, we affirm.

_____

[*]The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff-appellant Antoine D. Wilson is an African-American from Columbus, Ohio. After being found guilty of felonious assault in June 1998, he was sentenced to seven years' imprisonment, to run concurrently with a three-year term imposed on a firearm specification. Section 2901.07 of the Ohio Revised Code ("DNA statute" or "the Act"), in its present form, requires that a person convicted of a felony who is sentenced to a prison term "shall submit to a DNA [deoxyribonucleic acid] specimen collection procedure." In October 2003, Wilson submitted, over his objection, to the collection of a DNA specimen by allowing officials at the Southern Ohio Correctional Facility to swab buccal cells from the inside of his cheek. Pursuant to the Act, the resultant sample was forwarded to the Ohio Bureau of Criminal Identification and Investigation ("BCI&I") for analysis and for entry of the resultant DNA profile into the state and national DNA index systems. The DNA profile remains indefinitely in the index systems and is available for use by law enforcement agencies in seeking matches with DNA evidence obtained in pending and future criminal investigations. In addition, the DNA samples collected by the Ohio Department of Rehabilitation and Correction are also stored indefinitely.

Wilson commenced this action in September 2004 by filing a five-count complaint, naming as defendants the Director of the Ohio Department of Rehabilitation and Correction, the Superintendent of the BCI&I, the Ohio Attorney General, and the wardens of correctional facilities where Wilson has been incarcerated. Wilson proceeds under 42 U.S.C. § 1983, alleging that the collection and maintenance of his DNA sample and the recording of his DNA profile violate his constitutional rights. By consent of the parties, the case was referred to Magistrate Judge Norah McCann King for all purposes and, ultimately, for entry of judgment on the parties' cross-motions for summary judgment.

The district court granted defendants' motion for summary judgment in March 2007. On Count I, the court ruled that the Fourth Amendment protection against unreasonable searches and seizures is not violated because a prisoner's diminished privacy rights are outweighed by the state's interest in preventing, deterring and solving crimes. On Count II, the court ruled that substantive due process rights are not violated because the swabbing or extraction of saliva from a prisoner's mouth is such a minimal intrusion as to not implicate any fundamental right to bodily integrity. On Count III, the court held that procedural due process rights are not violated because the DNA sample collection process is attended by adequate procedural safeguards to minimize the risk of erroneous deprivation. On Count IV, the court ruled that the Fifth Amendment protection against compulsory self-incrimination is not violated because DNA samples are not testimonial in nature. Finally, on Count V, the court held that any disparate adverse impact on African-Americans, who are disproportionately over-represented in Ohio prison populations, is not actionable because there is no evidence of intentional discrimination. On appeal, Wilson challenges all of these holdings.[1]

# II. ANALYSIS

The parties agree that this case poses no questions of fact and that the district court's legal rulings in denying Wilson's motion for summary judgment and granting defendants' motion for summary judgment are subject to *de novo* review. *See Cutter v. Wilkinson*, 423 F.3d 5879, 584 (6th Cir. 2005) ("Questions concerning the constitutionality of a statute are reviewed *de novo*." (quoting *United States v. Sawyers*, 409 F.3d 732, 735 (6th Cir. 2005))).

---

[1]During the pendency of this appeal, on June 17, 2007, Wilson was released from prison, subject to a three-year period of parole. As explained below, this change in status has no material impact on the merits of his claims.

### A. Fourth Amendment Unreasonable Search and Seizure

During the last several years, the federal appellate courts have addressed a plethora of claims by prisoners, parolees, supervised releasees and probationers, challenging the constitutionality of federal and state laws that require them to submit to collection of DNA specimens for purposes of DNA profiling. Most of these challenges have been brought as claims for violations of the Fourth Amendment protection against unreasonable search and seizure. Such Fourth Amendment challenges have been uniformly rejected by the courts, as the government's compelling interests in crime control have consistently been deemed to outweigh the plaintiffs' diminished privacy interests.

Most recently, the Ninth Circuit rejected such a challenge to the federal DNA Analysis Backlog Elimination Act, as amended by the Justice for All Act. *United States v. Kriesel*, 508 F.3d 941 (9th Cir. 2007). The *Kriesel* court noted that every circuit to consider a Fourth Amendment challenge to the federal DNA Act has upheld the Act. *Id.* at 946 (citing *United States v. Weikert*, 504 F.3d 1, 9 (1st Cir. 2007); *Banks v. United States*, 490 F.3d 1178, 1183 (10th Cir. 2007); *United States v. Amerson*, 483 F.3d 73, 78 (2d Cir. 2007); *United States v. Hook*, 471 F.3d 766, 772-74 (7th Cir. 2006); *United States v. Conley*, 453 F.3d 674, 677-81 (6th Cir. 2006); *United States v. Kraklio*, 451 F.3d 922, 924 (8th Cir. 2006); *United States v. Castillo-Lagos*, 147 F. App'x 71 (11th Cir. 2005)). In each of these cases, whether the court saw fit to apply the "special needs" test or, instead, the "totality of the circumstances" test, the result was the same. Because the government's compelling interests in crime control were deemed to outweigh the challenger's diminished privacy rights, the challenged "search" was held not to be unreasonable.[2] In *Conley*, the Sixth Circuit upheld the federal DNA Act under both tests.

Moreover, Fourth Amendment challenges to parallel state DNA-indexing statutes have met with similar results. *See e.g.*, *Padgett v. Donald*, 401 F.3d 1273 (11th Cir. 2005) (Georgia statute); *Green v. Berge*, 354 F.3d 675 (7th Cir. 2004) (Wisconsin statute); *Shaffer v. Saffle*, 148 F.3d 1180 (10th Cir. 1998) (Oklahoma statute); *Schlicher v. Peters*, 103 F.3d 940 (10th Cir. 1996) (Kansas statute); *Boling v. Romer*, 101 F.3d 1336 (10th Cir. 1996) (Colorado statute); *Jones v. Murray*, 962 F.2d 302 (4th Cir. 1992) (Virginia statute).

Nonetheless, appellant Wilson maintains the district court erred in awarding judgment to the state defendants on his Count I Fourth Amendment claim.

### 1. *"Totality of the Circumstances" Test or "Special Needs" Test?*

Although the federal courts have reached uniform results, they have been divided regarding the most appropriate test to apply in scrutinizing a Fourth Amendment challenge to a DNA-indexing statute. Under the "totality of the circumstances" test, determining whether a search is reasonable requires "assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Samson v. California*, 547 U.S. 843, 126 S.Ct. 2193, 2197 (2006) (quoting *United States v. Knights*, 534 U.S. 112, 118-19 (2001)); *see also Conley*, 453 F.3d at 679-80. In *Samson*, the Supreme Court applied the totality-of-the-circumstances test in evaluating and upholding a

---

[2]The cases recognize a "privacy continuum," in which an offender's diminished privacy interests wax or wane, depending on his status in the criminal justice system. *See Banks*, 490 F.3d at 1186-87. For instance, the privacy interests of a convicted felon who is a prisoner are, for purposes of DNA profiling, practically extinguished, *see id.*; whereas the privacy interests of a parolee or supervised releasee, which status represents "an established variation on imprisonment," *see Samson v. California*, 547 U.S. 843, 126 S.Ct. 2193, 2199 (2006), are slightly less diminished; and the privacy interests of a probationer, depending on the conditions of his probation, are somewhat more substantial, "because parole is more akin to imprisonment than probation is," *id.* at 2198; and the privacy interests of a felon whose term of imprisonment or supervision has expired are greater still, approaching those of one who has never been convicted, *Banks*, 490 F.3d at 1186-87.

suspicionless search of a parolee. The Court expressly observed that application of the totality-of-the-circumstances test rendered examination of the search under the "special needs" test unnecessary. 126 S.Ct. at 2199.

Under the "special needs" doctrine, the Supreme Court has recognized that a warrantless, suspicionless search may be justified "when special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987). While a "general interest in crime control" does not suffice, "some special law enforcement concerns" may justify a minimal intrusion during information-seeking efforts where "the concept of individualized suspicion has little role to play." *Illinois v. Lidster*, 540 U.S. 419, 424-25 (2004). If a "special need" for the suspicionless search is identified, then the "reasonableness" of the search must be evaluated, balancing the gravity of the public interests, the degree to which the intrusion advances the public interests, and the severity of the interference with individual liberty. *Id*. at 426-27. The special-needs test is thus a more stringent test, adding a threshold step to the totality-of-the-circumstances test and requiring the court to first identify some "special need beyond the normal need for law enforcement" before undertaking a balancing of interests. *Amerson*, 483 F.3d at 79 n.6.

In the wake of the *Samson* ruling, in which the Supreme Court upheld a suspicionless search of a parolee without bothering to identify any special need, courts have viewed *Samson* as affirmatively signaling that the totality-of-the-circumstances test is the appropriate test for assessing the reasonableness of suspicionless DNA collection requirements as applied to parolees and supervised releasees. *Kriesel*, 508 F.3d at 946-47; *Weikert*, 504 F.3d at 9; *Banks*, 490 F.3d at 1185. *But see Amerson*, 483 F.3d at 78-79 (holding the special-needs test remains the proper framework for analyzing the constitutionality of a DNA-indexing statute when applied to probationers, whose privacy interests are not as diminished as those of parolees); *Hook*, 471 F.3d at 772-73 (applying special-needs test to the claim of a supervised releasee without mentioning *Samson*).

Wilson urges the court to apply the special-needs test, as the district court did below, but contends that the district court misapplied the test.[3] Wilson contends *Samson* should be narrowly construed as applying the totality-of-the-circumstances test in lieu of the special-needs test only under circumstances where a suspicionless search of a parolee is expressly authorized by parole agreement and by state law. The argument is expressly refuted by *Samson* itself. It is true that *Samson*'s parole agreement included a search condition that the Supreme Court viewed as demonstrating that Samson had a significantly diminished expectation of privacy as a parolee. Yet, the Court expressly declined to rest its holding on a consent rationale, expressly declined to address whether the search condition was justified as a special need, and expressly anchored its holding in general Fourth Amendment reasonableness principles. *Samson*, 126 S.Ct. at 2199.

Accordingly, we conclude—consistent with the conclusion reached by the Ninth Circuit in *Kriesel*, the First Circuit in *Weikert*, and the Tenth Circuit in *Banks*—that the Ohio DNA statute, as applied to Wilson, is properly evaluated under the totality-of-the-circumstances test. If, per *Samson*, the totality of the circumstances test affords sufficient assurance of the reasonableness of a suspicionless search of a parolee, who has less diminished privacy rights than a prisoner, then it clearly affords adequate protection to the rights of a prisoner. Wilson was a prisoner when corrections officials collected his DNA sample and when the district court evaluated the merits of his claim. Now, to the extent Wilson's Fourth Amendment claim may be considered to be premised on his slightly greater privacy interests as a parolee (challenging not the collection of the DNA

---

[3]The district court, following *Conley*'s lead, evaluated the Ohio DNA statute under both tests.

sample, but the state's continued retention and potential abuse of both his DNA information and sample), Wilson's claim still falls squarely within the teaching of *Samson*.[4]

### 2.  *Reasonableness Balancing*

The totality-of-the-circumstances test requires the court to determine the reasonableness of the subject search based on a balancing of the state's interests against Wilson's privacy interests. In *Conley*, the Sixth Circuit undertook this interest-balancing exercise in connection with a Fourth Amendment challenge to the federal DNA Act by a supervised releasee. The court characterized the government's interests in establishing a nationwide DNA database as "compelling." *Conley*, 453 F.3d at 680 (quoting with approval *United States v. Sczubelek*, 401 F.3d 175, 185 (3d Cir. 2005)). The court identified several purposes served by the federal Act's DNA collection and indexing requirements: obtaining reliable proof of convicted felons' identities; promoting increased accuracy in the investigation and prosecution of crimes; deterring convicted felons from committing additional crimes, thereby protecting communities in which they are eventually released; and aiding in the solving of crimes by serving to exculpate the innocent and inculpate the guilty. *Id*. at 678-80. Considering the minimal intrusion implicated by the drawing of a blood sample, the court concluded that the government interests outweighed Conley's greatly diminished privacy interests as a convicted felon. *Id*. at 680-81.

Wilson attempts to distinguish *Conley* by arguing that Ohio's interests in enacting the Ohio DNA statute should be judged by its legislative history, not by the purposes served by the federal DNA Act. He argues the legislative history demonstrates that the collection of DNA samples from convicted felons in Ohio was authorized to promote the administration of criminal justice and aid in deterring, preventing and solving crimes. Obviously, these purposes are substantially similar to those identified in *Conley*. Wilson does not argue that these interests are not compelling, but maintains they are ordinary law enforcement objectives that do not qualify as "special needs."

The argument is unavailing for two reasons. First, the governmental interests need not qualify as "special needs" under the totality-of-the-circumstances test, which, as indicated above, is properly applied in this case. Second, even courts that have applied the special-needs test have found that the very purposes identified both in *Conley* and in the cited legislative history are not "ordinary," but "special" law enforcement concerns that *do* qualify as special needs. *See e.g.*, *Amerson*, 483 F.3d at 81-83; *Hook*, 471 F.3d at 772-73.

Further, *Conley* is not materially distinguishable on the basis of the extent of intrusion, as the swabbing of saliva to obtain a DNA sample is even less invasive than the drawing of a blood sample. *Amerson*, 483 F.3d at 84. Finally, Wilson's privacy interests, first as a prisoner and now as a parolee, are less substantial or certainly no greater than those asserted by Conley, a supervised releasee.

Unable to distinguish *Conley*, Wilson argues that it is wrongly decided. Yet, his arguments are the same arguments that have been consistently and conclusively rejected by the overwhelming weight of authority. Hence, even if we were free to depart from the precedent established in *Conley*, we have been presented no persuasive reason to do so. Because the Ohio DNA statute appears to be materially indistinguishable from the federal DNA Act and other similar state statutes that have been uniformly upheld by the federal courts against Fourth Amendment challenge, we find no error in the district court's judgment in favor of the state defendants on Wilson's Count I claim.

---

[4]Even if we were to apply the more stringent special-needs test, there is no reason to believe the ultimate result would be different. It appears that every circuit that has applied the special-needs test has found the government's interest in DNA indexing to be a special need and has upheld the challenged statute. *See e.g.*, *Conley*, 453 F.3d at 677-79; *Amerson*, 483 F.3d 81-89; *Hook*, 471 F.3d at 772-73.

## B.  Substantive Due Process

In Count II, plaintiff alleges that the involuntary collection and retention of his DNA specimen and DNA information constitute a deprivation of property and liberty without due process. The district court awarded judgment to the state defendants on this claim in part based on *Graham v. Connor*, 490 U.S. 386, 395 (1989), concluding that, to the extent the claim is based on the involuntary extraction of a DNA sample, plaintiff complains of an "unreasonable search and seizure," a wrong for which a "more explicit textual source of constitutional protection" is found in the Fourth Amendment.  Given the protection afforded by the Fourth Amendment, the court correctly concluded, per *Graham*, that plaintiff could not also proceed with a claim under the "more generalized notion of substantive due process." *Graham*, 490 U.S. at 395.

Yet, the analysis of the substantive due process claim does not stop here.  Wilson's substantive due process claim is not based solely on the taking of his saliva, but also on the indefinite retention of his DNA sample and DNA information, as well as the sharing of his DNA profile through the state and national DNA-indexing systems.  These actions, he alleges, constitute a deprivation of his liberty interest in nondisclosure of private information and are separately actionable as a substantive due process violation.  Indeed, to the extent the claim is premised on the retention and disclosure of personal DNA information, it does not implicate the Fourth Amendment, *see Johnson v. Quander*, 440 F.3d 489, 498 (D.C. Cir. 2006), and may arguably be pursued as a substantive due process violation without transgressing *Graham*.

The district court also addressed this dimension of Wilson's substantive due process claim, but only perfunctorily.  It relied on *Padgett v. Donald*, 401 F.3d 1273, 1280-81 (11th Cir. 2005), in concluding that Wilson's liberty interest in his personal DNA information is not such a "fundamental right" "implicit in the concept of ordered liberty" as to receive protection under the rubric of substantive due process. *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997).  Yet, as Wilson points out on appeal, the *Padgett* court did not actually address whether a prisoner's privacy interest in nondisclosure of personal DNA information is unconstitutionally infringed by the state's disclosure thereof in the DNA-indexing systems because the claim had not been asserted.

Wilson insists that this privacy interest is a fundamental right, but acknowledges that the Sixth Circuit has rejected the notion.  Whereas some other circuits have recognized the existence of a constitutional right of privacy in various types of confidential information, *see Denius v. Dunlap*, 209 F.3d 944, 957-58 (7th Cir. 2000) (collecting cases), the Sixth Circuit has held "that the Constitution does not encompass a general right to nondisclosure of private information." *Cutshall v. Sundquist*, 193 F.3d 466, 480 (6th Cir. 1999).   Instead, the Sixth Circuit has continued to restrict the right of privacy to those rights that can be deemed "fundamental" or "implicit in the concept of ordered liberty." *Id.*; *see also Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 574 (6th Cir. 2002).  These "'fundamental' interests include the privacy interest one has in matters relating to marriage, procreation, contraception, family relationships, child rearing, and education." *Overstreet*, 305 F.3d at 575.

Wilson asks the court to expand the list of fundamental interests to include the confidentiality of his DNA profile, which he says contains a host of personal and medical information.  He has failed to cite a single case, however, in which the disclosure of DNA profiles in DNA indexes has been held to abridge any right to privacy, much less a fundamental right entitled to the protection of substantive due process.  Moreover, the state defendants maintain that the DNA profile disclosed in the Combined DNA Index System ("CODIS") does not contain sensitive personal information, but is useful for human identity testing only.  According to Dr. Julie A. Heinig, Assistant Laboratory Director of Forensic Services at the DNA Diagnostics Center in Fairfield, Ohio, no "personal information," such as "race, criminal history or case-related information" is contained in CODIS.

On this record, it is clear that Wilson, a convicted felon, does not have a fundamental privacy interest in the information contained in his DNA profile that is protected by substantive due process. Where the state's collection of the DNA specimen that produced the profile has been shown to be justified for Fourth Amendment purposes (considering (a) the compelling governmental interests in crime control, (b) the diminished privacy interest of a convicted felon, and (c) the minimal intrusion necessitated by collection of the specimen), the notion that principles of substantive due process would apply to frustrate the compelling governmental interests by prohibiting the disclosure of the DNA profile in CODIS is simply untenable.

Still, Wilson protests, contending that the state's indefinite retention of his DNA sample, which, given advancements in scientific technology, may be "mined" in the future for a host of personal and medical information beyond that contained in his present DNA profile, cannot be justified. Indeed, Dr. Heinig recognized that blood or buccal samples contain genetic information that could conceivably be subject to misuse. She also observed, however, that the Act prescribes strict penalties for misuse of the samples or unauthorized disclosure of such information. These safeguards adequately ensure that any risk to Wilson's legitimate privacy interests is minimized. *See Amerson*, 483 F.3d at 85.

Further, Wilson's concerns are purely speculative. The hypothetical possibility of some future abuse does not substantiate a justiciable controversy. *See Banks*, 490 F.3d at 1191-92 (recognizing *potential* for abuse of DNA information despite statutory safeguards, but, in the absence of evidence of abuse, refusing to adjudicate based on speculation); *Amerson*, 483 F.3d at 86-87 (same); *Johnson*, 440 F.3d at 499 (same); *Boling v. Romer*, 101 F.3d 1336, 1341 (10th Cir. 1996) ("[P]laintiff's assertion that the state might misuse the information derived from his DNA samples, when he makes no allegations of any specific misuse, fails to state a justiciable controversy."). Accordingly, we find no error in the district court's judgment in favor of defendants on the substantive due process claim, as Wilson has failed to identify and substantiate infringement of any protected fundamental privacy interest.

## C. Procedural Due Process

In Count III, Wilson alleges that he was deprived of property and liberty without procedural due process when his DNA specimen was collected and his DNA profile disclosed in CODIS without a pre-deprivation hearing. The district court rejected the claim, observing that due process is a flexible concept and concluding that, since Wilson had diminished privacy interests as a prisoner, the degree of intrusion was minimal, and the risk of erroneous deprivation was slight, no pre-deprivation hearing was required. In support, the district court observed that the Sixth Circuit has already upheld the Ohio DNA statute against procedural due process challenge in an unpublished opinion, *Williams v. Dep't of Rehabilitation and Correction*, 3 F. App'x 415, 417 (6th Cir. 2001) (holding that collection of a DNA blood sample was a *de minimis* taking not entitled to extensive due process protections).[5] In addition, the district court cited similar rulings by other circuits: *Boling*, 101 F.3d at 1340-41 (rejecting due process challenge to Colorado's DNA statute); *Rise v. Oregon*, 59 F.3d 1556, 1562-63 (9th Cir. 1995) (observing that little purpose would be served by requiring a pre-deprivation hearing before extraction of a DNA blood sample, since the only criterion is conviction of a predicate offense); *Johnson v. Quander*, 370 F. Supp. 2d 79, 90-93 (D.D.C. 2005) (noting that statutory limits on use of DNA samples render any risk of erroneous deprivation remote), *aff'd*, 440 F.3d 489 (D.C. Cir. 2006).

---

[5]The *Williams* holding has been recently confirmed in *United States v. Bean*, 214 F. App'x 568, 571-72 (6th Cir. 2007), addressing a procedural due process challenge to the federal DNA Act.

Wilson quarrels in vain with the well-established notion that, as a prisoner, he had only extremely limited privacy interests.[6] He has also failed to identify what purpose would be served by a pre-deprivation hearing or other process. Further, while Wilson takes issue with the case law authorities relied on by the district court, he fails to demonstrate that they are wrongly decided and fails to identify a single decision by any court that recognizes a prisoner's procedural due process right to a hearing before collection of a DNA sample or disclosure of a DNA profile in CODIS. Hence, Wilson's objection to the district court's judgment in favor of the state defendants on Wilson's Count III procedural due process claim is overruled.

### D. Fifth Amendment Self-Incrimination

In Count IV of his complaint, Wilson alleges the state's collection and retention of his DNA sample constitutes a violation of this Fifth Amendment privilege against self-incrimination. He maintains that DNA is testimonial because it could reveal personal information and therefore come within the ambit of the Fifth Amendment. The district court rejected the claim, citing numerous federal court decisions holding that DNA samples are not testimonial in nature. On appeal, Wilson has failed to identify a single contrary authority.

Most recently, the Ninth Circuit confirmed the unanimous view: "The extraction of DNA doesn't implicate the privilege against self-incrimination because DNA samples are 'physical' evidence, not 'testimonial' evidence." *United States v. Zimmerman*, — F.3d —, 2007 WL 4394421 at *3 (9th Cir. Dec. 18, 2007) (citing *Schmerber v. California*, 384 U.S. 757, 765 (1966) (holding that "blood test evidence, although an incriminating product of compulsion, [is] neither [ ] testimony nor evidence relating to some communicative act or writing" and is therefore not protected by the Fifth Amendment)). *See also Bean*, 214 F. App'x at 571 (same); *Hook*, 471 F.3d at 773 (same); *Boling*, 101 F.3d at 1340 (same). These rulings recognize that a DNA sample is analogous to a photograph or fingerprint, another form of physical evidence identifying an individual that falls outside the scope of Fifth Amendment protection. Again, Wilson gives us no reason to depart from these precedents, which we find to be persuasive. We therefore uphold the district court's judgment as to Count IV.

### E. Disparate Impact

In Count V, Wilson alleges that the Ohio DNA statute has a disproportionate adverse impact on African-Americans because African-Americans make up a disproportionately large percentage of Ohio prison populations as compared to their representation in the general population. He argues that this disparate impact is actionable under 42 U.S.C. § 1983 in two ways: (1) as violative of Department of Justice regulations implementing § 602 of Title VI of the Civil Rights Act of 1964; and (2) as violative of Wilson's constitutional right to equal protection of the laws.

#### 1. DOJ Regulations Implementing Title VI

The district court correctly rejected the first theory, citing *Johnson v. City of Detroit*, 446 F.3d 614, 629 (6th Cir. 2006). In *Johnson*, the court held that a federal regulation alone cannot create a right enforceable through § 1983. Wilson acknowledges that the Supreme Court has held that Congress did not intend to create a private right of action to enforce § 602 of Title VI (forbidding disparate impact practices). *Alexander v. Sandoval*, 532 U.S. 275, 289-90 (2001). He

---

[6]At the time Wilson's DNA sample was collected, the time before which he claims he ought to have been afforded a hearing, he was a prisoner, i.e., a person with very limited privacy rights. To the extent he now argues that his privacy rights are enhanced (i.e., now that he is a parolee) and soon may be fully restored (i.e., when he completes his term of parole supervision), he relies on circumstances that can hardly justify a retrospective requirement that he ought to have been afforded a pre-deprivation hearing.

argues, however, that the Court left open the possibility that disparate impact claims enforcing § 602 could be brought through § 1983, citing the dissenting opinion of Justice Stevens. *Id*. at 299-301.

Yet, while the dissenting opinion appears to have left open the possibility, the Court's majority opinion did not: "[W]e have found no evidence anywhere in the text to suggest that Congress intended to create a private right to enforce regulations promulgated under § 602." *Id*. at 291. Subsequently, two circuits have interpreted *Sandoval* as meaning that regulations promulgated pursuant to § 602 of Title VI cannot be enforced through a private cause of action under 42 U.S.C. § 1983. *Save Our Valley v. Sound Transit*, 335 F.3d 932, 939-40 (9th Cir. 2003); *South Camden Citizens in Action v. New Jersey Dep't of Env. Protection*, 274 F.3d 771, 789 (3d Cir. 2001). The reasoning employed in *Johnson* is consistent with these decisions. Wilson has not identified any case specifically holding that § 602 regulations *are* enforceable through a § 1983 action. We therefore reject his contention that *Johnson* is not controlling and that he can maintain a § 1983 action to enforce regulations promulgated pursuant to § 602 of Title VI.

### 2. *Equal Protection*

Wilson correctly argues that the district court's ruling neglected to address his equal protection theory. This may be because Count V of his complaint does not expressly allege a violation of his equal protection rights; it relies exclusively on Title VI of the Civil Rights Act. Yet, even if we assumed Wilson properly stated a claim for denial of equal protection, it is apparent that the state defendants would have been entitled to summary judgment.

Wilson acknowledges that the Ohio DNA Act is facially neutral. He also acknowledges that to prevail on his claim that the Act nonetheless violates equal protection, he must prove the existence of a racially discriminatory purpose behind the statute. *Washington v. Davis*, 426 U.S. 229, 239-40 (1976). He admits that he lacks any direct evidence that the Ohio legislature enacted the statute with racially discriminatory intent, but asks the court to draw an inference of invidious racially discriminatory purpose based on the totality of the relevant facts. Yet, he has failed to identify any relevant facts supporting the urged inference other than disparate impact.

*Washington* recognizes that evidence of disparate impact alone, though not irrelevant, is insufficient to justify an inference of invidious discriminatory purpose. *Id*. at 242. "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects on an identifiable group." *Hernandez v. New York*, 500 U.S. 352, 360 (1991) (quoting *Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)). The record is devoid of evidence of such a discriminatory purpose.

Accordingly, Wilson having presented no evidence other than disparate impact to support his equal protection claim, summary judgment was properly awarded to the state defendants on this claim as well.

### III. CONCLUSION

For the foregoing reasons, the district court's judgment, awarding summary judgment in favor of the state defendants on all five of plaintiff Wilson's challenges to the Ohio DNA statute, is **AFFIRMED**.