[Cite as *State v. Brothers*, 2014-Ohio-3132.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 100163 and 100164**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# DEVIN BROTHERS

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-12-564362 and CR-12-561089

**BEFORE:** Jones, P.J., S. Gallagher, J., and Rocco, J.

**RELEASED AND JOURNALIZED:** July 17, 2014

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender

BY: Jeffrey Gamso
Assistant Public Defender
310 Lakeside Avenue, Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: Mahmoud Awadalla
        Lindsay Raskin
        Margaret A. Troia
Assistant County Prosecutors
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., P.J.:

**{¶1}** Defendant-appellant Devin Brothers appeals his convictions in Case No. CR-561089 as it relates to one of the victims, and his convictions in Case No. CR-564362, which relate to a single victim. We affirm.

## I. Procedural History

**{¶2}** In April 2012, Brothers was indicted in Case No. CR-561089. The victim, relative to this appeal, was M.M.[1] In regard to M.M., Brothers was charged with two counts of rape by force or threat of force, both with one- and three-year firearm and sexually violent predator specifications; aggravated robbery with one- and three-year firearm specifications; and two counts of kidnapping with one- and three-year firearm, sexual motivation, and sexually violent predator specifications.

**{¶3}** In July 2012, Brothers was indicted in Case No. CR-564362. The victim in that case was A.B. Brothers was charged with rape by force or threat of force with one- and three-year firearm and sexually violent predator specifications; three counts of kidnapping with one- and three-year firearm, sexual motivation, and sexually violent predator specifications; aggravated robbery with one- and three-year firearm specifications; theft; and petty theft.

**{¶4}** The cases were consolidated and proceeded to a jury trial with the exception

[1]There were three other victims listed in the case. Brothers was acquitted of the charges relative to one victim (Counts 1 through 4), found guilty of the charge, menacing by stalking (Count 10), relative to the second victim, J.R., and guilty of the charges, aggravated robbery, kidnapping, robbery, and aggravated menacing (Counts 11 through 14), relative to the third victim, B.W. We will discuss the facts relative to the second and third victim, because they provide additional background of the case.

of the sexually violent predator specifications that were tried to the bench. In Case No. CR-561089, the jury returned a guilty verdict on all the crimes committed against M.M. In Case No. CR-564362, the jury found Brothers guilty of all the crimes committed against A.B. The trial court found Brothers guilty of all the sexually violent predator specifications.

{¶5} Several of the charges in each of the cases merged for the purposes of sentencing and the state elected which counts it wished the trial court to sentence on; the trial court also merged the gun specifications. The court sentenced Brothers to an aggregate 45 years-to-life sentence, which included life sentences on the rapes and consecutive sentences on some of the underlying counts.

## II. Facts

### October 23, 2011: Victim A.B.

{¶6} A.B. testified that she was raped in the early morning as she was walking to a bus stop to go to work. As she was walking, a man approached her from behind and started talking sexually to her. A.B. started walking faster in an attempt to get away from him, but was unsuccessful. The man grabbed her, pointed a gun to her head, and pulled her behind an abandoned house. A.B. testified that she could see the outline of the gun and feel the metal on the back of her head.

{¶7} After the man got A.B. behind the house, he vaginally raped her while he threatened that if she screamed he would kill her. A.B. testified that the man ejaculated on the sidewalk. After he raped her, he stole her bank card and iPod. Prior to leaving

the scene, the man demanded that A.B. remain there quietly until she counted to 100, and he threatened that if he heard her, he would kill her.

{¶8} After the attack, A.B. made her way to a nearby gas station, where the police were called. Upon arrival of the police, A.B. identified the location where the perpetrator had ejaculated. Law enforcement collected evidence from the area for testing. A.B. was transported to the hospital, where a sexual assault examination was performed and evidence, including vaginal cavity, anal cavity, and buttocks swabs, were collected.

{¶9} Law enforcement compiled a photo array, which included Brothers' photo. A.B. selected another individual from the array and indicated at that time that she was "very sure" of her identification. In court, however, she stated that she was not able to identify the man who had raped her.

{¶10} Christopher Smith, a forensic scientist for the Bureau of Criminal Identification ("BCI"), testified as an expert witness in DNA analysis. Smith testified that semen was present on both the vaginal and anal swabs taken from A.B. Samples had also been taken from Brothers and they were tested against A.B.'s samples. Three tests were conducted and Smith testified as to their results.

Test 1

The proportion of the population that cannot be excluded as possible contributors to the mixture of DNA profiles in the non-sperm fractions of the skin stain swabs buttocks * * * is 1 in 551,600 unrelated individuals.

Test 2

The proportion of the population that cannot be excluded as possible contributors to the mixture of DNA profiles in the sperm fraction of this skin stain swabs, buttocks lower * * * is 1 in 2,677,000 unrelated individuals.

Test 3

The expected frequency of occurrence in the DNA profile on the sperm fraction of the swab of the stain on the ground * * * is 1 in 6 quintillion 609 quadrillion unrelated individuals.

**{¶11}** Based on the testing, Smith opined as follows:

We were able to conclude that Devin Brothers cannot be excluded as the source of the semen from the swab from the stain on the ground and he cannot be excluded as a contributor to the DNA on the skin stain swabs from the buttocks or the skin stain swabs from the lower buttocks * * *.

It would indicate that it would be highly unlikely that the DNA profile from the stain on the ground would be from another individual that is present on the planet at this time. It would be — for the skin stain swabs, it would be somewhat unlikely that it would not be his DNA. In my expert opinion, I would include him as a contributor to the DNA in the samples and the statistical analysis gives weight to that inclusion.

**{¶12}** On this testimony, Brothers was convicted of rape, three counts of kidnapping, aggravated robbery, theft, and petty theft relative to A.B.

**November 3, 2011: Victim M.M.**

**{¶13}** M.M. testified that she was walking to school on the morning of November 3, when she saw Brothers walking with his arm around a girl. Shortly thereafter, M.M. saw Brothers alone; she made eye contact with him. As she continued walking, she heard someone behind her, turned around, and saw that it was Brothers. M.M. testified that she started walking faster, but Brothers caught up to her, put a gun to her neck and

demanded her money. Brothers then dragged her behind an abandoned house, and took her money out of her pockets and her iPod from her bookbag. He threw the victim to the ground, put a hat over her head, and raped her vaginally and anally. He threatened to kill her when she attempted to escape. When he had finished, Brothers grabbed his hat and ran.

{¶14} M.M. went to school, where she reported the rape to school authorities. She was taken to the hospital and a sexual assault examination was performed. Brenda Gerardi, from BCI, testified about the results of M.M.'s rape kit testing. Regarding the swabs in comparison with Brothers' sample, she testified as follows:

> Devin Brothers cannot be excluded as the source of the semen on the anal swabs. Based on national database provided by the Federal Bureau of Investigation, the expected frequency of occurrence of the DNA profile from the sperm fraction of the anal swabs not attributed to [M.M.] is 1 in 1 quintillion 95 quadrillion unrelated individuals.

{¶15} Law enforcement presented a photo array to M.M.; she identified Brothers as her raper, to a "one hundred percent" of certainty. M.M. testified that she had several opportunities to see Brothers' face both leading up to and during the attack. She also identified Brothers in court as her attacker.

{¶16} On this testimony, Brothers was convicted of two counts of rape, aggravated robbery, and two counts of kidnapping relative to M.M.

**November 7, 2011: B.W.**

{¶17} B.W. testified that early in the morning of November 7, as she walked to school, she was approached by Brothers. She had recognized him as the man who,

several weeks prior, walked behind and "followed" her as she had walked to school. On November 7, Brothers approached her from behind and attempted to speak to her. She kept walking, but would turn around to see exactly where he was.

{¶18} At one point, Brothers grabbed her hood and forced her into a yard behind an abandoned house. Brothers had a beer bottle in one hand and he told B.W. that if she said anything he was going to "crack" her with it. As he was dragging her, Brothers asked her if she "had anything," to which B.W. replied that she only had a dollar.

{¶19} The attack ended when a woman on a porch saw what was occurring and yelled out at Brothers to let B.W. go. Brothers shaped his hand like he had a gun, raised that arm at the woman, made a shooting motion, and then ran off.

{¶20} After the attack, B.W. called her mother and talked to her as she made her way back home. B.W. told her mother that her attacker looked similar to her stepbrother. After hearing the description, B.W.'s brother left on his bicycle to look for the attacker. The brother encountered Brothers nearby, and finding him to fit his sister's description, approached him. A physical confrontation between the two ensued. After the confrontation, Brothers ran to a house and entered it. The brother, who followed, later identified the house to the police. The brother also identified Brothers from a photo array.

{¶21} On this testimony, Brothers was convicted of aggravated robbery, kidnapping, robbery, and aggravated menacing relative to B.W.

**October 17 to November 3, 2011: Victim J.R.**

**{¶22}** J.R. testified that during the above-referenced time frame, she was stalked by Brothers in the general area where the other attacks occurred as she would walk to school. She testified that Brothers would approach her from behind, talk about sex, and try to get her to go with him behind abandoned homes. J.R. would repeatedly tell Brothers to leave her alone, but he persisted. She even several times changed the route she would walk to school, but would still encounter Brothers. J.R. identified Brothers in court as her stalker.

**{¶23}** On this testimony, Brothers was convicted of menacing by stalking relative to J.R.

**Apprehension of Brothers**

**{¶24}** Based on the victims' descriptions of their attacker, detectives assigned to the case began searching in the area where all the crimes occurred for the suspect. On the morning of November 10, 2011, a detective observed a male matching the descriptions of the suspect walking behind a female. As the detective drove her unmarked car down the street where the suspect was, the suspect fled. The man, Brothers, was shortly thereafter apprehended. A box cutter was recovered from his person.

**Brothers' Testimony**

**{¶25}** According to Brothers, his DNA that was found on the ground in A.B.'s case was because he had consensual sex with another female in that location the night before after he had been at a party. He testified that "if I had knew [sic] it would have

been a crime scene, I would have picked it up and cleaned it up." He further testified that he did not believe his DNA was really on the victim. Brothers was unable to provide the name, age, phone number, or address of his alleged consensual partner. Brothers was also unable to provide the exact location of the party where he claimed to have been.

{¶26} In regard to the presence of his DNA on M.M., Brothers testified that the two had had consensual sex. According to Brothers, it was M.M. who had actually pursued him. He testified that he went behind the abandoned house to urinate and M.M. followed him. On cross-examination, however, Brothers described that he "caught her from behind."

III. Assignments of Error

I. Because the evidence was insufficient to prove that Mr. Brothers committed the offenses charged in Case 564362, the convictions violated his rights to fair trial and due process as protected by the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution.

II. Mr. Brothers's conviction of the offenses charged in Case [5]64362 is not supported by the manifest weight of the evidence.

III. Mr. Brothers's Sixth and Fourteenth Amendment rights to fair trial and to confront witnesses against him and his due process right to have the state obey its own evidentiary rules were violated when the state presented, over objection and without adequate foundation, testimony indicating DNA frequency rates derived from population studies by and programming developed and maintained by the FBI without presenting any witness to testify about how those studies were conducted and why they and the related database are valid and about how the programming was developed and why it is reliable and accurate.

IV. Law and Analysis

**Sufficiency of the Evidence**

**{¶27}** For his first assigned error, Brothers contends that the state failed to present sufficient evidence of the crimes against A.B. because she was unable to identify him. And according to Brothers, his DNA evidence recovered from the scene of the crime "provided no evidence that he raped" A.B. Thus, Brothers contends that the trial court erred in denying his Crim.R. 29 motions for acquittal. We disagree.

**{¶28}** A Crim.R. 29(A) motion challenges the sufficiency of the evidence. When reviewing a challenge of the sufficiency of the evidence, an appellate court examines the evidence admitted at trial and determines whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* A sufficiency challenge requires us to review the record to determine whether the state presented evidence on each of the elements of the offense. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997).

**{¶29}** As Brothers aptly notes, in-court identification of the defendant by a victim of crime is not essential to proving that the defendant actually committed the crime. This court addressed that point in *Cleveland Metroparks v. Lawrence*, 8th Dist. Cuyahoga

No. 98085, 2012-Ohio-5729, stating the following: "The failure to conduct an in-court identification is not fatal to the state's case when the circumstances of the trial indicate that the accused is indeed the person about whom the witnesses are testifying." *Id.* at ¶ 14, citing *State v. Melton*, 8th Dist. Cuyahoga No. 87186, 2006-Ohio-5610.

{¶30} Although A.B. was not able to identify Brothers as her attacker, the state presented other evidence that sufficiently identified Brothers as A.B.'s attacker. Brothers' DNA was found at the scene where A.B. was attacked. Brothers' explanation for the presence of his DNA being at the scene, that is, that he had had a sexual encounter there the evening before, was an issue of credibility for the jury to determine. On sufficiency review, we do not address matters of credibility. Rather, we review to determine if the state presented evidence that, if believed, would support the conviction. The presence of Brothers' DNA at the crime scene, coupled with A.B.'s testimony and the testimony of the other state witnesses, was sufficient evidence to support the conviction.

{¶31} In light of the above, the first assignment of error is overruled.

**Manifest Weight of the Evidence**

{¶32} In his second assigned error, Brothers challenges the conviction rendered against him for the crimes relative to A.B. as being against the weight of the evidence.

{¶33} A manifest weight challenge questions whether the state met its burden of persuasion at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13, citing *Thompkins*, 78 Ohio St.3d 380 at 390, 678 N.E.2d 541. When a conviction is

challenged on appeal as being against the manifest weight of the evidence, the reviewing court must examine the entire record, weigh the evidence and all reasonable inferences, consider the witnesses's credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387.

{¶34} In considering a manifest weight challenge, this court must remain mindful that the credibility of the witnesses and the weight to be given the evidence are primarily for the trier of fact to assess. *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact is in the best position to take into account inconsistencies, along with the witnesses's manner, demeanor, gestures, and voice inflections, in determining whether the proffered testimony is credible. *State v. Kurtz*, 8th Dist. Cuyahoga No. 99103, 2013-Ohio-2999, ¶ 26; *see also State v. Lilliard*, 8th Dist. Cuyahoga Nos. 99382, 99383, and 99385, 2013-Ohio-4906, ¶ 93 (In considering the credibility of witnesses on a manifest weight challenge, an appellate court is "guided by the presumption" that the jury, or the trial court in a bench trial, is "'best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'"), quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Reversal on manifest weight grounds is reserved for the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at *id.*, quoting *State v. Martin*, 20

Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶35} Brothers contends that the presence of his DNA at the scene of A.B.'s rape "provided compelling evidence that [he] ejaculated at that spot, [but] provided no evidence that he raped [A.B.]." We disagree.

{¶36} The presence of Brothers' DNA at the scene coupled with the presence of his DNA on A.B.'s person, and A.B.'s testimony provided compelling evidence to support the conviction. We are not persuaded by Brothers' contention that the DNA found on the ground was unreliable because there were three samples that were collected, but only one was tested. Brothers motioned for an expert at the state's expense and the trial court granted his motion. His expert could have had the other samples tested. Further, his expert did not refute the sample that was tested.

{¶37} As already mentioned, Brothers contended that he had had a sexual encounter at the scene the night before A.B. was raped. However, he could not provide any corroborating evidence, such as the name, address, or phone number of the female, or even the name or address of the person whose party he alleged he had attended. The jury obviously did not believe Brothers. On this record, we find nothing incredible about the jury's decision and, therefore, will not disturb it.

{¶38} Moreover, the testimony of the other state's witnesses provided compelling evidence against Brothers in that it showed his modus operandi in committing his crimes.

{¶39} In light of the above, the second assignment of error is overruled.

**Admissibility of DNA Evidence**

**{¶40}** In his third assignment of error, Brothers contends that the DNA testimony, which was presented through the BCI forensic examiners Christopher Smith and Brenda Gerardi, was improperly admitted. Smith and Gerardi testified about population frequency statistics. The data used and the database maintained for calculating those statistics, as well as the software used in obtaining the statistics, was developed and maintained by the FBI. No one from the FBI testified at trial. Brothers contends that his right to confrontation was therefore violated. We disagree.

**{¶41}** In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that testimonial statements of a witness who does not appear at trial may not be admitted or used against a criminal defendant unless the declarant is unavailable to testify, and the defendant has had a prior opportunity for cross-examination. Thus*, Crawford* involved the admissibility under the Confrontation Clause of recorded testimonial statements of a person who did not testify at the trial. The holding in *Crawford* was that such statements, regardless of their reliability, are not admissible unless the defendant was able to cross-examine their maker.

**{¶42}** In *Crawford*, the United States Supreme Court stated that business records, which are analogous to public records are "by their nature * * * not testimonial" and not subject to the requirements of the Confrontation Clause. *Id.* at 56.

> To its credit, the Court's analysis of "testimony" excludes at least some hearsay exceptions, such as business records and official records. * * * To hold otherwise would require numerous additional witnesses without any apparent gain in the truth-seeking process.

*Id.* at 76 (Rehnquist, C.J., concurring).

{¶43} In *State v. Crager*, 116 Ohio St.3d 369, 2007-Ohio-6840, 879 N.E.2d 745, the Ohio Supreme Court addressed *Crawford* in examining whether the admission of DNA reports without the testimony of the analyst who prepared the report violated the Confrontation Clause. The court found the essential inquiry under *Crawford* was whether a particular statement was testimonial or non-testimonial. *Id.* at ¶ 41. It determined that the reports of DNA analysis prepared by an analyst at BCI were business records that fell under the hearsay exception of Evid.R. 803(6) and, therefore, were not testimonial under *Crawford*.

{¶44} DNA samples have also been held to be non-testimonial evidence with respect to the Fifth Amendment privilege against self-incrimination. For example, a DNA sample obtained from a state prisoner, pursuant to an Ohio statute requiring the collection of DNA specimens from convicted felons, was physical, rather than testimonial evidence, and thus did not implicate the prisoner's Fifth Amendment privilege against self-incrimination. *Wilson v. Collins*, 517 F.3d 421, 431 (6th Cir.2008). The Sixth Circuit reasoned that a DNA sample was analogous to a photograph or fingerprint identifying an individual. *Id.*, citing *United States v. Zimmerman*, 514 F.3d 851, 853 (9th Cir.2007); *see also Schmerber v. California*, 384 U.S. 757, 765, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (holding that "blood test evidence, although an incriminating product of compulsion, [is] neither * * * testimony nor evidence relating to some communicative act or writing" and is therefore not protected by the Fifth Amendment).

{¶45} This court addressed the issue of the use of statistical evidence not prepared

by the testifying witness in *State v. Bolton*, 8th Dist. Cuyahoga No. 96385, 2012-Ohio-169. This court held as follows:

> Many Ohio jurisdictions, including this one, have allowed expert opinion testimony under Evid.R. 703, even though the expert's opinion was based in part on statistics published by other sources. *State v. Ervin*, 8th Dist. [Cuyahoga] No. 80473, 2002-Ohio-4093, 2002 WL 1824977; *State v. Flowers*, 10th Dist. [Franklin] No. 99AP-530, 2000 Ohio App. LEXIS 1933, 2000 WL 552197 (May 4, 2000); *State v. Powell*, 2d Dist. [Montgomery] No. 18095, 2000 Ohio App. LEXIS 5829, 2000 WL 1838716 (Dec. 15, 2000); *State v. Stokes*, 8th Dist. [Cuyahoga] No. 71654, 1997 Ohio App. LEXIS 5530, 1997 WL 764815 (Dec. 11, 1997); *State v. Drain*, 10th Dist. [Franklin] No. 95APA03-351, 1995 Ohio App. LEXIS 5899, 1995 WL 765169 (Dec. 29, 1995). Furthermore, courts have addressed and rejected appellant's argument raised herein, holding that the statistical DNA evidence derived from the FBI database is not "testimonial" under *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). *Powell*, *supra*; *State v. Bruce*, 5th Dist. [Fairfield] No. 2006-CA-45, 2008-Ohio-5709, 2008 WL 4801648; *State v. Breeze*, 10th Dist. [Franklin] No. 92AP-258, 1992 Ohio App. LEXIS 6147, 1992 WL 356269 (Nov. 24, 1992). Accordingly, we find no error in the trial court's acceptance of [the] expert testimony and reliance on the FBI database.

*Id.* at ¶ 64.

{¶46} In light of the above-mentioned case law, Smith and Gerardi properly testified as to the DNA evidence in this case. The third assignment of error is, therefore, overruled.

{¶47} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of

the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
KENNETH A. ROCCO, J., CONCUR