JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Christopher M. Sperk, appeals his menacing conviction, which was rendered after a jury trial. We affirm.
 {¶ 2} A complaint was filed against Sperk in the Berea Municipal Court charging him with menacing, a misdemeanor of the fourth degree in violation of R.C. 2903.22. The case proceeded to a jury trial.
 {¶ 3} The trial testimony established that Sperk and the victim, Jennifer Caruthers, had been married to each other but were divorced at the time of the incident that gave rise to this case. The couple had two children; Caruthers was the custodial parent and Sperk had visitation rights.
 {¶ 4} On Sunday, September 2, 2007, the day before Labor Day, the children were with Caruthers, but were scheduled to go to Sperk's house for Labor Day. Caruthers and Sperk had a conversation about Sperk picking up the children. They did not agree on the time, however; Sperk wanted to get them at 9:00 a.m., and Caruthers wanted him to pick them up 10:00 a.m.
 {¶ 5} The next day, Labor Day, Sperk arrived at Caruthers's home in Stow at 9:00 a.m. to get the children. Caruthers answered the door and told Sperk that the children were not ready, and would not be so until 10:00 a.m. Sperk was angered by this, and according to Caruthers and her new husband, John, Sperk called the house several times yelling at Caruthers and banged on the front door. *Page 4 
 {¶ 6} John went outside and told Sperk that the children would not be ready until 10:00 a.m., and asked him to wait for them off his property. Sperk extended his hand to John, but John refused.
 {¶ 7} The children eventually left with Sperk and he and Caruthers agreed that they would be picked up at his house in Strongsville at 8:00 p.m. that evening.
 {¶ 8} Because of Sperk's behavior earlier in the day, John insisted on going with Caruthers to Sperk's house; usually, Caruthers would go by herself. John drove his pick-up truck, and upon arriving at Sperk's house, parked across the street, where parking was permitted. John testified that, because of the situation earlier in the day when he told Sperk to get off his property, he did not feel comfortable pulling into Sperk's driveway.
 {¶ 9} According to Caruthers and John, the children, who were outside with Sperk's brother, kept motioning for John to pull in the driveway. John refused, however. Sperk called Caruthers on her cell phone twice and insisted that John pull into the driveway. Caruthers and John still refused, and Caruthers told Sperk that they were leaving and he could take the children to school the next day. John drove to another street, where he and Caruthers parked for a few minutes.
 {¶ 10} Eventually, however, they returned to Sperk's house, because the children had called Caruthers on her cell phone and said that they wanted go *Page 5 
home with her. This time, John pulled his truck perpendicular to Sperk's driveway, where Caruthers was closest to the driveway. The children walked to the truck, along with Sperk, his father, and his brother.
 {¶ 11} Caruthers testified that as the group walked to the truck she pulled out a can of pepper spray and held in one hand, and a heavy flashlight in the other hand. She testified that she did so because she felt threatened and did not know what Sperk and his family members were up to. She explained that her fear was based upon past violent incidents with Sperk.
 {¶ 12} As the children got in the back cab portion of the truck, Sperk went up to Caruthers' window, which was partially opened, and his brother stood behind him. Sperk's father went around the truck to the driver's side window, where John was. Meanwhile, Sperk stuck his arm in the window, across Caruthers. Caruthers testified that she felt Sperk's action was threatening, but Sperk testified that he merely wanted to shake John's hand. Similarly, the father testified that he just wanted to meet the man (John) with whom his grandchildren resided, but John testified that he did not feel it was a friendly encounter.
 {¶ 13} Caruthers testified that she tried to roll the window up, but Sperk prevented her from doing so. She told Sperk that she had pepper spray, and when he still did not move, she sprayed him and his brother. John drove away; Sperk was still holding onto the window and was dragged a few feet. *Page 6 
 {¶ 14} John then drove to the police station where he and Caruthers made a report. As Caruthers and John were leaving the station, they encountered Sperk's brother and father who were there to make their own report. Caruthers asked for and received an escort to the truck because she felt threatened.
 {¶ 15} Sperk raises five assignments of error for our review. For ease of discussion, we consider them out of order.
 {¶ 16} In his third and fourth assignments of error, Sperk contends that the trial court erred by allowing testimony of his "bad temper" and "prior bad acts."
 {¶ 17} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage (1987),31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus. See, also, Evid. R. 611 and 901. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid. R. 401. Although relevant, evidence must be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." (Emphasis added.) Evid. R. 403(A).
 {¶ 18} Sperk argues that "[t]he prior acts testimony from the State's witnesses was not relevant to the charges against [him]." Sperk also argues that "[t]he probative value of the prior acts testimony was substantially outweighed by the potential prejudice to [him]." We are not persuaded by either argument. *Page 7 
 {¶ 19} R.C. 2903.22(A), governing menacing, provides that "[n]o person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of the other person *** or a member of the other person's immediate family."
 {¶ 20} Sperk's past relationship and history of incidents with Caruthers were directly relevant to the question of whether Sperk knowingly caused Caruthers to believe that he would cause her physical harm. Further, the probative value of the testimony was notsubstantially outweighed by unfair prejudice to Sperk. See, e.g.,State v. Sain (Oct. 10, 1991), Montgomery App. No. 12095 ("Lastly, we note that Evid. R. 403 speaks in terms of unfair prejudice. Logically, all evidence presented by a prosecutor is prejudicial, but not all evidence unfairly prejudices a defendant. It is only the latter that Evid. R. 403 prohibits.").
 {¶ 21} Sperk also argues that the trial court admitted improper character evidence (i.e., that he had a bad temper), and improper prior bad acts testimony. Defense counsel did not object to the character testimony and therefore we review for plain error.[1]
 {¶ 22} Evid. R. 404(A) governs character evidence and provides in relevant part that: *Page 8 
 {¶ 23} "Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, subject to the following exceptions:
 {¶ 24} "(1) Character of accused. Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same is admissible[.]"
 {¶ 25} Upon review, we find that the testimony of Sperk's bad temper was not offered to prove that Sperk acted in conformity therewith in committing the offense in this case. Rather, Caruthers testified that Sperk had a bad temper in response to a question by the assistant prosecuting attorney about what caused her to be concerned about Sperk. As already established, the State was required to prove that Sperk knowingly caused Caruthers to believe that he would cause her physical harm. Thus, the question was an attempt to establish the reasonableness of Caruthers's concern. Further, Caruthers's response that Sperk had a bad temper was an isolated incident, and the State did not pursue that character evidence any further. As such, we do not find plain error.
 {¶ 26} Evid. R. 404(B) governs other crimes, wrongs or acts, and provides as follows:
 {¶ 27} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, *Page 9 
opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 28} Again, the prior bad acts evidence was not introduced to prove that Sperk acted in conformity with them. Rather, the evidence was offered to demonstrate the reasonableness of Caruthers's fear of Sperk, given her past relationship with him. The admission of the other acts evidence under those circumstances was proper. See, e.g., State v.Michaels, Seneca App. No. 13-99-41, 1999-Ohio-958 ("The trial judge correctly concluded that [the victim's] past relationship and history of incidents with the defendant was directly relevant to the question of whether or not the defendant `caused another to believe' his alleged threat.").
 {¶ 29} In light of the above, the third and fourth assignments of error are overruled.
 {¶ 30} Having found that the character and prior bad acts evidence were properly admitted, we now consider Sperk's challenge of his conviction based on the sufficiency[2] and manifest weight of the evidence, as set forth in his first and second assignments of error.
 {¶ 31} An appellate court's function in reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at *Page 10 
trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 32} While the test for sufficiency requires a determination of whether the prosecution has met its burden of production at trial, a manifest weight challenge questions whether the prosecution has met its burden of persuasion. State v. Thompkins, 78 Ohio St.3d 380, 390,1997-Ohio-52, 678 N.E.2d 541. When considering a manifest weight claim, a reviewing court must examine the entire record, weigh the evidence and consider the credibility of witnesses. State v. Thomas (1982),70 Ohio St.2d 79, 80, 434 N.E.2d 1356. The court may reverse the judgment of conviction if it appears that the factfinder "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Thompkins at 387, quotingState v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. A judgment should be reversed as against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." Thompkins at 387. A finding that a conviction was supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. Id. at 388. *Page 11 
 {¶ 33} As already mentioned, the State had to prove that Sperk knowingly caused Caruthers to believe that he would cause her physical harm. See R.C. 2903.22(A). Much of Sperk's argument regarding the sufficiency and weight of the evidence revolves around the fact that no weapon or verbal threat were involved. Threats, however, can be made nonverbally and without the use of a weapon.
 {¶ 34} Not only was there a history of Sperk acting violently toward Caruthers, but earlier on the day of the incident, Sperk and John had had a confrontation. Although Sperk attempted to characterize his action of extending his arm to John as a friendly one, a reasonable inference could be made that it was not, and in fact, the jury obviously did not believe that it was. Moreover, given the encounters between Caruthers, Sperk, and John, and the fact that in Caruthers's attempt to get the children there had been "tension" about John not pulling in the driveway, a reasonable inference could be made that Sperk knowingly caused Caruthers to believe that he would cause physical harm to her by approaching John's vehicle with his brother and father. On this record, we find that the conviction was not against the manifest weight of the evidence and, thus, that it was necessarily supported by sufficient evidence.
 {¶ 35} Accordingly, the first and second assignments of error are overruled. *Page 12 
 {¶ 36} In his fifth assignment of error, Sperk contends that his counsel was ineffective for failing to request a limiting instruction in regard to the character and prior bad acts evidence.
 {¶ 37} We evaluate claims of ineffective assistance of counsel under the two-part test provided in Strickland v. Washington (1984),466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052. "In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's representation fell below an objective standard of reasonableness and that, but for counsel's errors, the result of the proceeding would have been different." State v. Stevens, Montgomery App. No. 19572,2003-Ohio-6249, ¶ 33, citing Strickland; State v. Bradley (1989),42 Ohio St.3d 136, 142, 538 N.E.2d 373.
 {¶ 38} Generally, a defendant is entitled to an appropriate instruction limiting the scope of a jury's consideration of potentially prejudicial evidence that is admitted for a limited purpose. However, it has also been recognized that a defendant may decide, as a matter of trial strategy, not to request a limiting instruction because of concerns that it will only emphasize in the juror's minds the evidence of other criminal acts committed by the defendant, thereby reinforcing the prejudice. See, e.g., State v. Tisdale, Montgomery App. No. 19346, 2003-Ohio-4209, ¶ 47-48. Counsel's failure to request a limiting instruction here could have been a tactical decision. *Page 13 
 {¶ 39} Moreover, as discussed above, there was substantial evidence of Sperk's guilt, and the result of the trial would not have been different had a limiting instruction been given.
 {¶ 40} Accordingly, the fifth assignment of error is overruled.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Berea Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, J., and FRANK D. CELEBREZZE, JR., J., CONCUR
[1] "Plain errors affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim. R. 52(B).
[2] Sperk made a Crim. R. 29 motion for acquittal at both the conclusion of the State's case and his case. *Page 1