[Cite as *Cleveland Metroparks v. Lawrence*, 2012-Ohio-5729.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.   98085

## CLEVELAND METROPARKS

PLAINTIFF-APPELLEE

vs.

## PAUL LAWRENCE

DEFENDANT-APPELLANT

## JUDGMENT:
## REVERSED AND VACATED

Criminal Appeal from the
Lakewood Municipal Court
Case No. 2011 CRB 01752

**BEFORE:**   E. Gallagher, J., Jones, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:**   December 6, 2012

**ATTORNEY FOR APPELLANT**

Dominic J. Vitantonio
Argie, D'Amico & Vitantonio
6449 Wilson Mills Road
Mayfield Village, Ohio   44143


**ATTORNEY FOR APPELLEE**

Anne Eisenhower
Chief Prosecuting Attorney
Cleveland Metroparks
4600 Valley Parkway
Fairview Park, Ohio   44126


EILEEN A. GALLAGHER, J.:

{¶1}   Paul Lawrence appeals from his conviction in the Lakewood Municipal Court of two counts of menacing.

{¶2}   In his assignments of error, appellant contends that the trial court erred in denying his Crim.R. 29 motions for acquittal and that his convictions were against the manifest weight of the evidence.

{¶3}   We reverse the judgment of the trial court and vacate the appellant's convictions.

{¶4}   The facts presented at trial were that on August 29, 2011, Allison Rowland and Elizabeth Difiore were in the Rocky River Reservation of the Cleveland Metroparks.   They had driven to the Metroparks and ran on the All-Purpose Trail to Hogsback Road, which they ascended.   While they were running up the hill, they observed a blue Chevy Malibu driven by

a white male in a baseball cap pass them on the roadway. During that time, they made eye contact with the driver. Once the two girls reached the summit, they saw that vehicle parked in the parking lot with the male seated inside. The male then exited his automobile and walked to a grouping "of like three trees." At that time, the girls descended the hill and began to walk on the All-Purpose Trail. During their walk, they saw the same blue Chevy Malibu drive past them. They later saw the vehicle approaching from the opposite direction. When they saw the Chevy Malibu parked along the road, they changed direction and began walking back to their own automobile. It was after they had reached their car that they waved down a park ranger and related to him their observations. While talking to the ranger, the girls saw the blue Chevy Malibu driving on the road towards them and they pointed it out to the ranger. The ranger then approached the vehicle and spoke to the driver, the appellant.

{¶5} Both of the witnesses testified that although they made eye contact with the appellant, they admitted that he made no statements to them, that he made no gestures towards them, overt or otherwise, they had no prior relationship with him and that there was no physical contact or confrontation between either of them and the appellant.

{¶6} The offense of menacing occurs when an individual knowingly causes another to believe that the offender will cause physical harm to the person or property of such other person or to a member of his immediate family. R.C. 2903.22. Menacing does not require that the offender be able to carry out a given threat. *State v. Schwartz*, 77 Ohio App.3d 484,

602 N.E.2d 671 (12th Dist.1991). Instead, it is sufficient if the offender knowingly causes the victim to believe that the threat will be executed. *Niles v. Holloway*, 11th Dist. No. 96-T-5533, 1997 Ohio App. LEXIS 4517 (Oct. 3, 1997). The threat need not actually be verbalized; it can be implied by the offender's actions. *Id.*; *State v. Sperk*, 8th Dist. No. 91799, 2009-Ohio-1615, ¶ 33. The key is whether the victim genuinely believes that he or she is facing physical harm to person or property. *Id.*

{¶7} Lawrence concedes that threats sufficient to support a conviction for menacing can be nonverbal or implied. Nevertheless, he contends that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence because there was "no evidence that [he] did anything at all that could in any manner be construed to lead to the conclusion that he 'knowingly caused' either of the alleged victims to believe that he would cause harm to them." He argues that he and the alleged victims were always in a public area, he only made eye contact with each victim once and there was nothing unique or noteworthy about the eye contact, he never said anything to the girls, and he never initiated or engaged in any communicative act or gesture with them.

{¶8} In his first and third assignments of error, Lawrence argues that the trial court erred in denying his Crim.R. 29 motion for acquittal because his convictions were not supported by suficient evidence and the alleged victims never identified him as the alleged perpetrator. In his second assignment of error, Lawrence contends that his convictions are

against the manifest weight of the evidence. We consider the assignments of error together because they are related.

{¶9} A Crim.R. 29 motion challenges the legal sufficiency of the evidence. *State v. Bowden*, 8th Dist. No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.

{¶10} A manifest weight challenge, on the other hand, questions whether the prosecution met its burden of persuasion. *State v. Thomas*, 70 Ohio St.2d 79, 80, 434 N.E.2d 1356 (1982). When considering a manifest weight challenge, a reviewing court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387. A judgment should be reversed as against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.* A finding that a conviction was supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *Id.* at 388.

{¶11} There is nothing in the record before us to support the charges of menacing. The record only reflects the unfounded beliefs of the two girls who testified.

{¶12} Additionally, neither of the girls who testified as victims made an in-court identification of the appellant as the perpetrator.

{¶13} A long-established principle of criminal law is that the prosecution must prove "beyond a reasonable doubt the identity of the accused as the person who actually committed the crime." *In re K.S.*, 8th Dist. No. 97343, 2012-Ohio-2388. In-court identification of the defendant by a victim or witness may be the most common method of establishing such identity, but it is not mandatory.

{¶14} "The failure to conduct an in-court identification is not fatal to the state's case when the circumstances of the trial indicate that the accused is indeed the person about whom the witnesses are testifying." *State v. Melton*, 8th Dist. No. 87186, 2006-Ohio-5610; *State v. Shinholster*, 9th Dist. No. 25328, 2011-Ohio-2244.

{¶15} In this case, there was not sufficient evidence, circumstantial or otherwise, that the appellant was the person whom Miss Rowland and Miss Difiore claim menaced them.

{¶16} We recognize that those witnesses pointed out to a park ranger a vehicle, driven by the appellant, that they claimed followed them. We also acknowledge that Ranger David Albaugh made an in-court identification of the appellant as the driver of said vehicle. However, that is not sufficient to prove the identity of the alleged perpetrator.

{¶17} Miss Rowland and Miss Difiore were never asked to identify the appellant in court, they never viewed a photo array in which they identified the appellant and, other than

pointing out a specific vehicle, a rather common Chevy Malibu, they did not make any further identification of the appellant to the ranger at the scene.

{¶18} Appellant's conviction is vacated and he is ordered discharged.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said lower court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

LARRY A. JONES, SR., P.J., CONCURS;
KATHLEEN ANN KEOUGH, J., DISSENTS
WITH SEPARATE OPINION


KATHLEEN ANN KEOUGH, J., DISSENTING:

{¶19} Respectfully, I dissent. I would hold that Lawrence's menacing convictions were supported by sufficient evidence and not against the manifest weight of the evidence. Furthermore, I would find that Lawrence's identity as the perpetrator was proven beyond a reasonable doubt.

Accordingly, I would overrule the assignments of error and affirm Lawrence's convictions.

{¶20} The majority omits significant details from the record when recounting the facts of this case. The evidence at trial demonstrated that as Elizabeth and Allison were jogging up the hill to the Stincomb Memorial, they noticed a dark blue Chevy Malibu *slow down* as it drove by. The driver of the car, a white male wearing a baseball cap, later identified as Lawrence, made eye contact with Elizabeth as the car slowly passed by. When the girls reached the top of the hill, they observed the Chevy Malibu parked in the parking lot; the car was the only car in the lot and the male was sitting in the car. The girls walked past the car to an overlook area; when they turned around, they saw the male get out of his car and hide behind some trees. Both Elizabeth and Allison testified that the male stood behind the trees, with his hands in the area of his genitals, *and watched them*.

{¶21} The male got back in his car when the girls started down the hill. The girls ran down the hill and began walking when they reached the road. Only a short time later, the Chevy Malibu came from behind the girls and passed them, *again noticeably slowing down as it drove by*. The girls continued walking, but just before they came to a curve in the road, they saw through some trees that the Chevy Malibu was pulled to the side of the road. Elizabeth testified that the car was parked right next to the path the girls

were walking and "it seemed like he was pulling over basically to wait for us."

At that point, Allison called her mother and told her that she and Elizabeth feared they were going to be harmed or kidnapped. She described the car and gave her mother the license number.

{¶22} Allison stayed on the phone with her mother as the girls turned around and began walking in the opposite direction, away from the car. But shortly thereafter, *the car came from behind the girls and slowly passed them again*. Allison made eye contact with the driver and gestured as if to say "What are you doing?" as he drove by. The girls decided to return to their car but as they were walking to the parking lot, *the car came back and slowly passed them again*. Allison testified that when they then began running to their car, *the car turned around and passed them yet again*. Elizabeth estimated that they had seen the car at least seven times by then.

{¶23} A Metroparks ranger on routine patrol saw the girls, who appeared to be distressed, standing by their car in the parking lot. When he pulled in the parking lot, Elizabeth and Allison immediately flagged him down and described what had happened to them. As they were standing in the parking lot talking to the ranger, they saw the Chevy Malibu come around the corner toward the parking lot. *Allison saw the driver slam on the brakes* and when they pointed out the car to the ranger, the young girls and the ranger saw it *make an abrupt U-turn and drive away*.

{¶24} The ranger followed the Malibu and effected a traffic stop. The driver told the ranger that he was a deputy with the Cuyahoga County Sheriff's Department and flashed his badge; after demanding more identification, the ranger learned the driver was Lawrence. When the ranger asked Lawrence what he was doing in the park, Lawrence told him that he was "killing time" while he waited to pick up his wife from work at Fairview Hospital. However, the ranger later learned that Lawrence's wife worked in downtown Cleveland at the Cuyahoga County Sheriff's Department, not at Fairview Hospital.

{¶25} On this record, it is evident that Lawrence knowingly menaced Elizabeth and Allison. He noticeably slowed down and made eye contact with Elizabeth when he drove by the girls the first time, as they jogged up the Stinchcomb Memorial hill. He was at the top of the hill when they got there, and then got out of his car, hid behind some trees and watched them, with his hands near his genitals, as they stood at the top of the hill. Another time, he parked his car on the side of the road, directly next to the path the girls were walking, and waited for them to walk around the curve in the road. When they turned to walk in the opposite direction, he immediately turned around and drove by them again. No matter what evasive action the girls took, Lawrence continued to follow them — each time they went a different way, he turned around, came back, and slowly drove by them again. He drove by

them at least five times, noticeably slowing down each time he drove by and making eye contact with each victim at least once. And even when Allison gestured to Lawrence — putting him on notice that his actions were threatening — he continued to follow the girls.

{¶26} Most significantly, when Lawrence saw the girls talking with a park ranger and pointing out his car to the ranger, he immediately braked, made an abrupt U-turn, and headed in the opposite direction. And after the ranger stopped him and questioned him, Lawrence attempted to avoid questioning by flashing his law enforcement badge and then lied about what he was doing in the park that day.

{¶27} "An accused's 'flight, escape from custody, resistance to arrest, * * * and related conduct are admissible as evidence of consciousness of guilt, and thus of guilt itself.'" *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, ¶ 167, quoting *State v. Eaton*, 19 Ohio St.2d 145, 160, 249 N.E.2d 897 (1969). *See also State v. Vanderhorst*, 8th Dist. No. 97242, 2012-Ohio-2762, ¶ 55 ("Flight does not in and of itself raise the presumption of guilt but it may show consciousness of guilt or a guilty connection with a crime.") Lawrence's attempts to flee and avoid questioning by flashing his badge, and his lies to the ranger about what he was doing in the park, demonstrate that he knew his conduct was not benign.

{¶28} "A person acts knowingly, regardless of his purpose, when he is

aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Lawrence was not convicted on the basis of the victims' "unfounded beliefs"; he was convicted because the evidence was clear that he knowingly caused Elizabeth and Allison to believe that he would cause them physical harm. As the majority points out, a threat need not be verbalized; it can be implied by the offender's actions. *Niles v. Holloway*, 11th Dist. No. 96-T-5533, 1997 Ohio App. LEXIS 4517 (Oct. 3, 1997). The key is whether the victim genuinely believes that he or she is facing physical harm to person or property. *Id.* Both Elizabeth and Allison testified that they believed Lawrence was going to harm them, a credibility determination that is for the trier of fact. Accordingly, I would find that Lawrence's convictions for menacing were not against the manifest weight of the evidence, and were supported by sufficient evidence.

{¶29} I also dissent from the majority's conclusion that there was insufficient evidence that Lawrence was the perpetrator. Allison and Elizabeth pointed out the Chevy Malibu that had been following them to the ranger, who then stopped the car. The ranger identified Lawrence in court as the driver of the Chevy Malibu that he stopped. Furthermore, detective Daniel Bader, who investigated the incident, testified that Lawrence admitted he was in the metroparks that day and that he was pulled over by a ranger. There can be no other conclusion than that Lawrence was the person who

menaced Allison and Elizabeth.