[Cite as *Garfield Hts. v. Robinson*, 2025-Ohio-2870.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

CITY OF GARFIELD HEIGHTS,          :

    Plaintiff-Appellee,          :

    v.          :

LEONARD D. ROBINSON,          :

    Defendant-Appellant.          :

No. 114950

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED, VACATED AND REMANDED
**RELEASED AND JOURNALIZED:** August 14, 2025

---

Criminal Appeal from the Garfield Heights Municipal Court
Case No. CRB-2401852

---

### *Appearances:*

Timothy J. Riley, City of Garfield Heights Prosecutor, *for appellee.*

Leonard D. Robinson, *pro se.*

EILEEN A. GALLAGHER, A.J.:

{¶ 1}   Leonard Robinson ("Robinson") appeals his conviction for menacing. For the following reasons, we reverse the trial court's judgment, vacate Robinson's conviction and sentence and remand this case to the municipal court for a new trial.

## I.    Facts and Procedural History

{¶ 2}    On December 16, 2024, Robinson was charged with one count of menacing in violation of R.C. 2903.22, a fourth-degree misdemeanor, for an incident that allegedly took place on March 10, 2022.  The case proceeded to a bench trial on February 18, 2025 in the Garfield Heights Municipal Court.  The victim took the stand to testify but the record fails to reflect that she was sworn in at any time during the proceeding as required by R.C. 2317.30 and  Evid.R. 603.

{¶ 3}    The victim stated that Robinson was her ex-boyfriend and, on March 10, 2022, almost three years prior to trial, she was walking her dogs when Robinson "drove by in a vehicle screaming out basically things that he had done to me sexually . . . . He was basically taunting me in passing."  The victim accused Robinson of "basically frequenting other residents nearby [her] home" on unspecified dates.  The court asked the victim, "On March 10th, what happened?"  The victim answered, "Robinson drove past, and he was basically screaming out things that he had done to me sexually in the past.  He basically continues to do this."

{¶ 4}    The prosecutor then asked the victim if Robinson threatened her.  The victim answered, "Yes.  It's always threats.  It's always threats of . . . ." The prosecutor asked, "What did he say that was threatening?"  The victim stated that Robinson said "[h]e was going to shoot me.  He was going to run my dog over.  He often was frequenting where my son used to sit for his bus . . . ."

{¶ 5}    The victim made other accusations against Robinson although the prosecutor, as well as the court, repeatedly prompted her to talk about what had

happened on March 10, 2022. The victim stated that she filed a police report regarding the incident although she did not remember when. The complaint and probable cause affidavit in the record, which are dated March 22, 2022, state that "on or between the 10th and 12th day of March 2022 . . . . Robinson . . . [d]id knowingly cause [the victim] to believe that [Robinson] will cause serious physical harm to [the victim] to wit: stalking, as well and threatening and yelling obscenities towards [the victim]."

{¶ 6} During cross-examination, counsel introduced into evidence a journal entry dated December 5, 2024, in which the Cuyahoga County Common Pleas Court denied a request for a civil stalking protection order ("CSPO") that the victim had filed against Robinson. This journal entry states that the CSPO hearing was held on August 30, 2024 and the victim and Robinson testified at this hearing. The court found in this journal entry the following "three . . . uncontroverted facts that are dispositive of this case."

> 1. There has been no contact between [the victim] and [Robinson] since 2017. In [the victim's] words, "There's been no contact since 2017, and I've moved twice."
>
> 2. Other than [the victim's] allegation, there is no independent evidence that [Robinson] was driving the car that attempted to veer into [the victim's] car head-on, on May 29, 2024. [The victim] made a Police Report, but there was never corroboration that [Robinson] was involved.
>
> 3. Similarly, with regard to the incident that took place on June 5, 2024, there is no evidence whatsoever that [Robinson] had anything to do with the collision. On that date, [the victim] stated, "I was struck on June 5th by someone who may very well know him." The Court finds this statement to be pure conjecture as there is no independent evidence that he arranged or was behind any of these incidents.

**{¶ 7}** In denying the victim's request for a CSPO against Robinson, the court further stated in its December 5, 2024 journal entry:

> In this case, the evidence presented does not support a finding that [Robinson] engaged in a pattern of conduct that would cause [the victim] to believe she would suffer physical harm or mental distress. The majority of [the victim's] concerns appear to stem from issues which she has with [Robinson] about a grave and serious offense that she believes he committed over 10 years ago. Her concerns are not from any actual proven stalking behavior by [Robinson]. [The victim] is concerned that she is not sure what [Robinson] is capable of doing. However, this is purely speculation and calls for guesswork. [The victim's] speculation of future conduct does not support a finding in favor of a protection order. Much of [the victim's] fear was based on speculation and a desire to prevent future conflict rather than an immediate threat or ongoing harassment. Ohio law requires that a protection order be based on an existing threat or a *recent* history of past abuse or harassment. [The victim's] concerns about potential future problems are not sufficient grounds for issuing a protection order.

**{¶ 8}** At the February 18, 2025 trial in this case, defense counsel questioned the victim about her testimony at the 2024 CSPO hearing "that there's been no contact since 2017 between you and my client [Robinson] . . . ." In response, the victim stated, "That was a play on words." The court asked the victim if she did, in fact, testify to this at the 2024 CSPO hearing. The victim answered, "I, personally, had not had any contact with . . . Robinson other than legal basically obtaining protection orders and things of that nature . . . ." The court explained to the victim that if what she had testified at the 2024 CSPO hearing was true, "[t]his March 10th, 2022 event could not have happened if you have had no contact since 2017." In response to the court's explanation, the victim stated, "I disagree with the Judge's findings . . . . Because they are not factual on my statements within court."

{¶ 9} The victim continued talking, attempting to relitigate her allegation from the 2024 CSPO hearing that Robinson veered into her lane of traffic in May 2024 and accusing him of saying that he killed her brother and that he committed a sexual assault against her.

{¶ 10} The court stated that the victim "feels she has not been heard by any court" and took the following approach: "Well, this is what I'm going to do. Have a seat. I want to hear everything you want. Tell me whatever you want me to hear." The victim made allegations against Robinson dating back to 2016 and talked about other troubles she has had in her life over the years. Robinson's counsel did not object to this interaction with the trial court.

{¶ 11} In response to the victim's diatribe, the court stated, "Well, see, and I'm trying to figure out any other solution for you that I know, but, unfortunately, the only thing I have before me now is March 10th, 2022. And so anything happening after March 10th, 2022, I cannot consider regarding guilt of" Robinson. Specifically, the court stated that it was "disregarding whatever was said in that [2024 CSPO] proceeding. You've denied it. There's no one here to contradict you."

{¶ 12} The court summed up the pertinent parts of the victim's statements at the bench trial as follows: "So we have [the victim], who has testified that on March 10th, 2022, . . . Robinson drove by her house shouting obscenities threatening to kill her and her dog. That's the evidence I have." The court asked defense counsel if he wanted to present any other evidence on behalf of Robinson. Defense counsel answered, "No, Your Honor."

{¶ 13} The court found Robinson guilty of menacing. After the court announced the guilty verdict, defense counsel stated, "Then, Your Honor, I guess it's not too late to call [Robinson's] testimony." The court replied, "No. It's over. Don't make it worse than it is."

{¶ 14} The court proceeded to sentencing and stated as follows: "The fine is $100 and costs. I'm suspending any days. You're going to go for domestic violence counseling, anger management. You're not to have any contact with [the victim] and her son. A no-contact order will be put into place."

{¶ 15} The same day, the court issued a journal entry and checked the following boxes: "This matter came on for trial on this date [February 18, 2025]"; "No Contest Plea"; "Guilty Verdict"; "Jail Days 30"; "Suspended 30"; "Defendant is placed on active community control sanctions for 5 years"; "Defendant shall timely and successfully complete the following program[s]: . . . Domestic Violence Counseling/Anger Management"; and "No Contact Order . . . ."

{¶ 16} In other words, according to the sentencing journal entry, the case went to trial and the court issued a guilty verdict, but also Robinson pled no contest. Furthermore, the court did not sentence Robinson to 30 days in jail at the sentencing hearing nor did it sentence him to community-control sanctions.

{¶ 17} Robinson appeals raising the following assignments of error for our review:

I.      The conviction is not supported by sufficient evidence.

II.     The conviction is against the manifest weight of the evidence.

III.    Appellant was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

IV.    Cumulative error deprived defendant of a fair trial.

## II. Law and Analysis

### A. Pro Se Litigants

{¶ 18} The Ohio Supreme Court has "repeatedly declared that 'pro se litigants . . . must follow the same procedures as litigants represented by counsel.'" *State ex rel. Neil v. French*, 2018-Ohio-2692, ¶ 10, quoting *State ex rel. Gessner v. Vore*, 2009-Ohio-4150, ¶ 5. "Pro se litigants are presumed to have knowledge of the law and legal procedures and are held to the same standard as litigants who are represented by counsel." *Saeed v. Greater Cleveland Regional Transit Auth.*, 2017-Ohio-935, ¶ 7 (8th Dist.). However, courts "afford pro se litigants some leeway in construing their filings . . . ." *Djurin v. Ginley*, 2023-Ohio-1041, ¶ 13 (8th Dist.). "But that leeway manifests in limited ways [including] attempting to address a pro se litigant's arguments on the merits when they are indecipherable . . . ." *French* at ¶ 11. "[I]t is not for this court to assume the role of advocate for the pro se litigant . . . . Nor is it this court's duty to search for authority or to root out an argument to support an appellant's assignment of error." *Djurin* at ¶ 13.

### B. Menacing

{¶ 19} R.C. 2903.22 governs menacing, and subsection (A)(1) states, in part, that "[n]o person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of the other person . . . ." In *Cleveland*

*Metroparks v. Lawrence*, 2012-Ohio-5729, ¶ 6 (8th Dist.), this court analyzed a menacing conviction and stated that the "key is whether the victim genuinely believes that he or she is facing physical harm to person or property." *See also State of Ohio/City of Toledo v. Howard,* 2025-Ohio-999, ¶ 11 (6th Dist.) ("To prove the elements of menacing, the prosecution must show that the victim subjectively believed that there was a possibility of physical harm.").

### C. Manifest Weight of the Evidence

{¶ 20} In his second assignment of error, Robinson argues that his conviction for menacing is against the manifest weight of the evidence in the record. Specifically, Robinson argues that the victim's "account to the court is unreliable" and the "charge of menacing was wholly unsupported . . . because the State failed to present substantial, credible evidence . . . ." We agree.

{¶ 21} A manifest weight of the evidence challenge attacks the credibility of the evidence presented and questions whether the State met its burden of persuasion. *State v. Whitsett*, 2014-Ohio-4933, ¶ 26 (8th Dist.). Weight of the evidence "addresses the evidence's effect of inducing belief," i.e., "whose evidence is more persuasive — the state's or the defendant's?" *State v. Wilson*, 2007-Ohio-2202, ¶ 25, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386-387 (1997). When considering an appellant's claim that a conviction is against the manifest weight of the evidence, the appellate court functions as a "thirteenth juror" and may disagree "with the factfinder's resolution of . . . conflicting testimony." *Thompkins* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). Furthermore, in *State v. Jordan*,

2023-Ohio-3800, ¶ 17, the Ohio Supreme Court held that "[s]itting as the 'thirteenth juror,' the court of appeals considers whether the evidence should be believed and may overturn a verdict if it disagrees with the trier of fact's conclusion."

{¶ 22} In a manifest-weight challenge, the appellate court examines the entire record, weighs the evidence and all reasonable inferences that may be drawn therefrom, considers the witnesses' credibility and determines whether, in resolving conflicts in the evidence, the trier of fact "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 485 N.E.2d 717 (1st Dist. 1983). Reversal on manifest-weight grounds is reserved only for the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*

{¶ 23} In this case, the victim's testimony was not credible in light of the inconsistent statements she made under oath in the CSPO proceeding, which occurred approximately six months prior to the bench trial in this case. At Robinson's trial, the following evidence was presented and is part of the record on appeal: the victim's unsworn testimony; a copy of the complaint and affidavit of probable cause; and the 2024 CSPO judgment entry. For inexplicable reasons which were not explained on the record, the municipal court stated that it was "disregarding whatever was said in that [2024 CSPO] proceeding. You've denied it. There's no one here to contradict you."

{¶ 24} Our review of the transcript in this case does not support this finding. Rather, it shows that, when asked if this was her testimony, the victim gave three

different answers. First, she said it "was a play on words." Second, she said she "had not had any contact with . . . Robinson other than legal basically obtaining protection orders and things of that nature . . . ." Third, she stated that she disagreed with the judge's findings because they were not "factual on [her] statements within the court." None of these answers amount to the victim denying her testimony as depicted in the December 5, 2024 CSPO journal entry.

{¶ 25} Additionally, the following colloquy took place during the victim's redirect examination:

Q: You're basically saying that you don't agree with that and that you did see him on March 10th of 2022, correct?

A: If I may provide —

Q: No. Don't provide me with anything. Just answer that question because it's very important for the Court.

A: Sir, the sexual assault was the crime that was committed. The protection order was what the Court —

Q: I have to establish whether you saw him —

THE COURT: Wait. Wait.

{¶ 26} It was at this point in the proceedings that the court allowed the victim to talk about whatever she wanted to talk about. The next eight-and-a-half pages of the transcript memorialize the victim's continued unsworn statements, none of which have to do with this case and almost all of which were inadmissible at trial.

{¶ 27} Following the Ohio Supreme Court's mandate in *Jordan*, upon review, we sit as the thirteenth juror and consider whether the evidence presented

at this trial should be believed. Asked what happened on March 10, 2022, the victim stated that "Robinson drove by in a vehicle screaming out basically things that he had done to me sexually." The victim then made other allegations against Robinson that had nothing to do with the allegations in this case. It was only after being asked if Robinson threatened her that the victim said Robinson said that "[h]e was going to shoot me. He was going to run my dog over." As noted earlier in this opinion, none of the victim's statements were made under oath because the trial court failed to swear the victim in prior to her taking the witness stand.

{¶ 28} The complaint and affidavit of probable cause, which were signed two years and nine months before Robinson was charged in this case, state that the victim reported that Robinson was "threatening and yelling obscenities towards" her. The complaint and affidavit do not specify what Robinson's alleged threats were.

{¶ 29} The municipal court made the unusual and improper move of allowing the victim to tell the court anything she wanted the court to hear. This demonstrated an overt show of bias in favor of the victim. The overwhelming amount of the victim's unsworn testimony was inadmissible in court because it was irrelevant to the menacing charge at issue in this case. *See* Evid.R. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); Evid.R. 402 ("Evidence which is not relevant is not admissible.").

{¶ 30} The December 5, 2024 CSPO journal entry details a situation similar to the one in this case, wherein another court found this same victim to be not credible concerning allegations she made that Robinson was stalking her. In the CSPO journal entry, the court detailed how the victim's "concerns appear to stem from issues which she has with [Robinson] about a grave and serious offense that she believes he committed over 10 years ago. Her concerns are not from any actual proven stalking behavior by [Robinson]."

{¶ 31} Furthermore, when testifying at the August 2024 CSPO hearing about the reasons why the CSPO should be granted, the victim did not mention that Robinson threatened her on March 10, 2022, which is the allegation she made in this case.

{¶ 32} Faced with her prior inconsistent statement, the victim sidestepped answering the question of whether or not she made the prior statement under oath in open court. The victim could have offered an explanation of what she meant when she testified at the CSPO hearing. However, she did not offer an explanation, she did not admit to making the statement nor did she deny making the statement. Rather, she danced around the question, and this impacted her credibility.

{¶ 33} The court erred when it summarily disregarded the 2024 CSPO journal entry. The victim's prior inconsistent statement was properly entered into evidence by Robinson's counsel for impeachment purposes pursuant to Evid.R. 607. In August 2024, the victim testified at the CSPO hearing that she has had no contact with Robinson since 2017. In December 2024, the court denied the victim's request

for a CSPO, finding in its journal entry that the victim has had no contact with Robinson since 2017. Then in February 2025, at the trial in this case, the victim stated that in March 2022, Robinson threatened her. Given her sworn testimony in the CSPO hearing, the victim's unsworn statement at trial in this case is simply not believable.

{¶ 34} We acknowledge that the victim, after being asked if Robinson threatened her, stated that Robinson threatened her. However, the Ohio Supreme Court has stated that a "verdict can be against the manifest weight of the evidence even though legally sufficient evidence supports it." *State v. Myers*, 2018-Ohio-1903, ¶ 140. In this case, the conviction is against the manifest weight of the evidence because the victim's unsworn testimony is unbelievable, the victim was successfully impeached with a prior inconsistent statement and another court found other allegations that the victim made against Robinson did not warrant issuing a CSPO. The other court's findings concluded that the victim had what amounts to a vendetta against Robinson concerning "a grave and serious offense that she believes he committed over 10 years ago."

{¶ 35} After examining the entire record, weighing the evidence and reasonable inferences that may be drawn therefrom and considering the witness's credibility, we determine that the trial court clearly lost its way and created a manifest miscarriage of justice by convicting Robinson of menacing.

{¶ 36} Robinson's second assignment of error is sustained.

**{¶ 37}** Pursuant to App.R. 12(A)(1)(c), Robinson's remaining assignments of error are moot. The judgment of the municipal court is reversed, Robinson's conviction for menacing and associated sentence are vacated and this case is remanded to the municipal court for a new trial.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Garfield Heights Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, ADMINISTRATIVE JUDGE

SEAN C. GALLAGHER, J., and
WILLIAM A. KLATT, J.,* CONCUR

(*Sitting by assignment: William A. Klatt, J., retired, of the Tenth District Court of Appeals.)